■ In the Matter of SPENCE-CHAPIN ADOPTION SERVICE, Appellant, v. HERBERT POLK et al., Respondents. THE PEOPLE OF THE STATE OF NEW YORK ex rel. LEO H. BARRY, Appellant, v. SPENCE-CHAPIN ADOPTION SERVICE, Appellant, and HERBERT POLK et al., Respondents.— In consolidated habeas corpus proceedings for the custody of a child, the petitioners, the Spence-Chapin Adoption Service and Jean "Doe", the natural mother, appeal from a judgment of the Family Court, Nassau County, entered April 20, 1971, which dismissed the writs and awarded custody of the child, Angela "Doe", to her foster parents, respondents Herbert and Pearl Polk. Judgment reversed, on the law and the facts, without costs; the writs are sustained; and respondents Polk are directed to return the child to the Spence-Chapin Adoption Service for return of custody to the natural mother. Jean "Doe", the natural mother, was born in China in 1948 and came to the United States with her parents in 1963. In September, 1967, at the age of 18, she became pregnant by a married Chinese man. She concealed her pregnancy from her family and, a few months before the baby's birth, went to a home for unwed mothers. The child, Angela, was born on June 13, 1968. The natural mother did not have the means to care for the infant and the Commissioner of Social Services of the City of New York assumed its care. In November, 1968, the child's custody was transferred to the Spence-Chapin Adoption Service, which immediately placed her with respondents Polk for foster care. In October, 1969, after the child had been in their foster care for about 11 months, the Polks discussed the possibility of their adoption of the child. In January, 1970, a Spence-Chapin caseworker recommended to the agency that the Polks be permitted to adopt Angela and subsequently told the Polks they would be permitted to adopt her once a formal surrender had been obtained from the natural mother. The natural mother executed a surrender on May 12, 1970, requesting that Angela be placed for adoption with a Chinese family. The agency's executive committee, which is responsible for placement planning, met on the following day and recommended that Angela be placed for adoption with a Chinese couple. In considering and rejecting the Polks as prospective adoptive parents, the committee considered the facts that the Polks were already in their late forties, that they had raised five natural children of their own and that Angela might suffer a severe identity problem in later years because of the difference in race between herself and a Caucasian family in a white suburban community. When the Polks were advised of this determination and were asked to return the child to the agency, they refused. In June, 1970, the agency commenced its habeas corpus proceeding to secure the return of the child to it. In September, 1970, the natural mother called the agency for information as to the placement of the child and was advised that the Polks had not returned the child. The mother replied that if the child could not be placed in a Chinese home, she wanted it returned to her. On November 20, 1970, the mother, by her attorney, commenced her habeas corpus proceeding seeking return of the child. The two proceedings were consolidated. Between September 30, 1970 and commencement of the hearing on March 2, 1971, the natural mother proposed an arrangement which would permit her to care for the child. Both the Commissioner of Social Services and the

Spence-Chapin agency thought the proposed arrangement adequate, deemed the mother fit to care for Angela and consented to the return of the child to her. After a lengthy hearing, the Family Court held, in substance, that in proceedings of this type the welfare of the child is of supreme importance; that under sections 383 and 384 of the Social Services Law a natural parent who surrenders her child to an authorized agency shall not be entitled to custody except pursuant to a court order determining that the interest of the child will be promoted thereby and that the parent is fit, competent and able to properly maintain, support and educate the child; that the natural mother was no more equipped to rear the child now than she was at the time of birth; and that the best interests of the child would be promoted by continuing custody in the foster parents. Subdivision 1 of section 383 of the Social Services Law provides that the parent of a child remanded or committed to an authorized agency shall not be entitled to the custody thereof, except upon consent of the court, public board, commission, or official responsible for the commitment of the child, or in pursuance of an order of a court or judicial officer determining that the interest of the child will be promoted thereby and that the parent is fit and able to properly maintain, support and educate the child. This section is part of " ' a well-integrated, compact and uncomplicated procedure, which bears the impress of careful thought and intelligent planning ' " and reflects the care the Legislature has taken to define and limit the rights of natural parents who have surrendered their children to authorized agencies (*People ex rel. Scarpetta v. Spence-Chapin Adoption Serv.*, 28 N Y 2d 185, 191). The section presents in the disjunctive two means by which the parent who has surrendered a child can regain custody: (1) consent of court, agency or official responsible for the commitment of the child or (2) through a court order based upon a determination that the child's interest is served thereby and that the parent is fit to care for the child. In the instant case, the Commissioner of Social Services, the public officer responsible for the child's commitment, and Spence-Chapin, the agency working in conjunction with him, have both consented to the child's return to the natural mother and have determined that she will be a fit and competent parent. It cannot be assumed that these consents were given mindlessly without regard to the fitness of the parent or the interests of the child (cf. *Matter of Jewish Child Care Assn. of N. Y. [Sanders]*, 6 A D 2d 698, 699, affd. 5 N Y 2d 222). The record contains substantial evidence to support the Commissioner's consent and to demonstrate a rational basis for it. In a contest for custody of a child between parent and nonparents, the natural parent has a right to the care and custody of the child superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood (*People ex rel. Scarpetta v. Spence-Chapin Adoption Serv., supra; People ex rel. Kropp v. Shepsky*, 305 N. Y. 465, 468). The primacy of that status is not materially altered or diminished by the mere fact of a surrender, although it is a factor to be considered. A surrender is not an abandonment as a matter of law (*People ex rel. Scarpetta v. Spenc-Chapin Adoption Serv., supra*). Nor is mere hesitation, indecision or ambivalence (cf. *Matter of Bistany*, 239 N. Y. 19, 24). There is nothing in the record to render the Commissioner's determination that the natural mother is now fit and able to provide for the child arbitrary or unreasonable. Aside from the relationship which produced the child, there is nothing in the record to establish continuing immorality or improper motivation (cf. *People ex rel. Olecharski v. Nepereny*, 26 N Y 2d 1010, 1011; *Matter of Roe v. New York Foundling Hosp.*, 36 A D 2d 100, 104). The natural mother's proposed arrangement to care for the child with the help of her family, while not ideal, is not demonstrably inadequate. It is surely at least arguable that long-

term identity problems which might arise from the racial difference between Angela and the foster parents residing in a suburban community outweigh the immediate anxiety which might be caused by separation from the foster parents now. In short, the Commissioner's consent to the return of custody to the natural mother was lawful, supported by substantial evidence and has a rational basis in the record. Moreover, on the record before us, we are of the opinion that the best interests of the child and the superior right of the natural mother require that custody of the child be delivered to the natural mother. Rabin, P. J., Hopkins, Christ, Brennan and Benjamin, JJ., concur.